# In the United States Court of Federal Claims

No. 24-1784
Filed: June 2, 2025[*]
NOT FOR PUBLICATION

|  |
|---|
| **TELESTO GROUP, LLC,**<br>          *Plaintiff*,<br><br>v.<br><br>**UNITED STATES,**<br>          *Defendant,*<br><br>and<br><br>**ACCENTURE FEDERAL SERVICES, LLC,**<br>          *Defendant-Intervenor.* |

*Hamish Hume*, Boies Schiller Flexner LLP, Washington, D.C., *Samuel C. Kaplan, Benjamin P. Solomon-Schwartz*, *Jessica G. Mugler*, *Corey P. Gray*, of counsel, for the plaintiff.

*Christopher A. Berridge*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., *Blaine L. Hutchinson*, U.S. Army Legal Services Agency, of counsel, for the defendant.

*Aron C. Beezley*, Bradley Arant Boult Cummings LLP, Washington, D.C., *Gabrielle A. Sprio*, of counsel, for the defendant-intervenor.

### MEMORANDUM OPINION AND ORDER

**HERTLING**, Judge

The plaintiff, Telesto Group, LLC ("Telesto"), filed this bid protest challenging the Army's conduct of the prototype phase of the Enterprise Business System – Convergence ("EBS-C") program. The program was conducted by the Army pursuant to a Prototype Project Opportunity Notice ("PPON") under the Army's other transactions ("OT") authority pursuant to 10 U.S.C. § 4022. Under the program, the Army invited participation in a three-phase initiative to develop a solution to consolidate and increase the efficiency of five defense business systems.

---

[*] Pursuant to the protective order in this case, this opinion was under seal on May 16, 2025, and the parties were directed to propose redactions of confidential or proprietary information. The parties proposed one redaction, which is accepted and denoted by [* * *].

Phase 1 of the program, at issue in this protest, consisted of a multistep series of prototyping tasks, the evaluation of which allowed the Army to narrow the field of developers participating in the program until a finalist was found to meet the Army's needs. At the end of the prototyping phase, the program would move to step 7, the only step of the second phase of the project. At the end of the program, pursuant to 10 U.S.C. 4022(f), the Army contemplated awarding a follow-on production contract to the successful prototyping-project participant. Ultimately, the Army offered a single invitation at step 7 to the defendant-intervenor, Accenture Federal Services, LLC ("Accenture"), to continue in the program. Telesto, the only participant aside from Accenture remaining in the program, was not invited to participate in step 7.

Telesto challenges the Army's decision. It argues that the Army's evaluation of steps 4 and 5 of the initial prototyping phase of the program, and its decision to invite Accenture to move on to step 7, were arbitrary and capricious. Telesto also argues that the Army violated a statutory requirement that the program include "at least one nontraditional defense contractor . . . participating to a significant extent in the prototype project." 10 U.S.C. § 4022(d)(1)(A).

The defendant and Accenture moved to dismiss the protest. In addition, the parties have cross-moved for judgment on the administrative record. In support of its motion for judgment on the administrative record, the plaintiff filed two motions to supplement the record. (ECF 45; ECF 58.) Telesto seeks to supplement the record with: (1) the declarations of independent expert Ulrich Werner; (2) the declarations of Telesto officers George Batsakis, Lumi Noah, and Gary Celli; and (3) email correspondence between counsel for Telesto and counsel for the government. Finally, the plaintiff also seeks to complete the record with email correspondence between the Army and project participants that it alleges is missing from the record. (ECF 45.)

The defendants' motions to dismiss and the parties' respective for judgment on the administrative record are addressed and resolved in a memorandum opinion filed concurrently with this opinion. This opinion is limited to the plaintiff's motions to supplement and complete the administrative record. The court lacks jurisdiction to review the Army's conduct or determinations under the arbitrary and capricious standard. As a result, supplementation of the record as to those claims is not required. As for the others, the administrative record is sufficient, and excluding the plaintiff's declarations and emails would not preclude effective judicial review. The plaintiff has also waived its step-4 and step-5 claims by failing to object during the OT project. Even if the court had jurisdiction, Telesto's independent expert report focuses on elements of Accenture's prototype performance that were not relevant to the Army's review. The expert report is therefore unnecessary to the resolution of this case. Moreover, the administrative record is sufficient for the purpose of determining whether the Army's conduct under the OT project was arbitrary or capricious. Finally, Telesto's motion to complete the administrative record is denied because Telesto failed to provide evidence that the missing documents were considered by the Army. Accordingly, Telesto's motions to supplement and to complete the administrative record and are denied in full.

I.     **Factual Background**[1]

In November 2022, the Army issued a Statement of Need and the PPON for the development of a prototype solution for the EBS-C program. (AR Tab 176 at 846; Tab 163 at 767.) Prototypes developed according to the PPON would enable the Army to consolidate into a single program five "enterprise resource planning" ("ERP") defense-business systems and replace other systems, including one managing ammunition inventory, outside the ERP systems. (AR Tab 176 at 850.)

The Army issued the Statement of Need under its "OT authority" provided by 10 U.S.C. § 4022. To conduct a program under the OT authority, 10 U.S.C. § 4022(d)(1) requires that prototype projects meet at least one of the following conditions:

> (A) There is at least one nontraditional defense contractor [("NDC")] or nonprofit research institution participating to a significant extent in the prototype project.
>
> (B) All significant participants in the transaction other than the Federal Government are small businesses (including small businesses participating in a program described under section 9 of the Small Business Act (15 U.S.C. 638)) or nontraditional defense contractors.
>
> (C) At least one third of the total cost of the prototype project is to be paid out of funds provided by sources other than the Federal Government.
>
> (D) The senior procurement executive for the agency determines in writing that exceptional circumstances justify the use of a transaction that provides for innovative business arrangements or structures that would not be feasible or appropriate under a contract, or would provide an opportunity to expand the defense supply base in a manner that would not be practical or feasible under a contract.

The Statement of Need explained that the program would proceed in three phases. (AR Tab 176 at 857-58.) Embedded within the first two phases was a seven-step competitive process that would lead to the potential follow-on production contract. Participants would be evaluated at each step, and the Army would determine whether to invite a participant to move on to the next step. The seven steps composed phases 1 and 2. In this protest, Telesto challenges the Army's evaluations of Accenture's performance at step 4 and step 5 and the Army's decision to invite only Accenture to step 7.

---

[1] A condensed version of the facts is provided for the purpose of resolving the plaintiff's motions to supplement and complete the record. A comprehensive factual background can be found in the opinion, filed concurrently with this opinion, resolving the parties' cross-motions on the merits.

At step 4, the PPON instructed participants to "demonstrate the EBS-C [p]rototype [p]erformance for all Phase 1 requirements . . . including the EBS-C Prototype Phase 1 Success Metrics." (AR Tab 163 at 821.) Participants would "develop and install the EBS-C Solution in the Army Enterprise Cloud Environment . . . to prove out a hardened infrastructure and the [continuous integration/continuous delivery] pipeline." (*Id*. at 779.) Participants would also submit project work statement ("PWS") deliverables for evaluation as step 4 progressed. (*Id.*) To progress to step 5, a participant needed to achieve an "Interim Authority to Test." (*Id.*)

During its evaluation of step 4, the Army provided feedback to Telesto and Accenture on the performance of their prototypes. The Army evaluated the performance of PWS milestones, the achievement of an "Interim Authority to Test" milestone, the oral presentation, and the technology demonstration. (AR Tab 405 at 6082.) The Army found that both Accenture and Telesto "met" the PWS and "Interim Authority to Test" milestones. (*Id*.; Tab 407 at 6121.) The participants' oral presentations and technology demonstrations were graded using adjectival ratings of unacceptable, marginal, acceptable, good, or excellent. (AR Tab 405 at 6083.) Accenture received ratings of good for both its oral presentation and technology demonstration (*id.* at 6096); Telesto received a rating of good for its oral presentation and a rating of acceptable for its technology demonstration. (AR Tab 407 at 6138.) Both Telesto and Accenture, the only participants remaining in the EBS-C program at step 4, received invitations to proceed to step 5. (AR Tab 409 at 6141; Tab 410 at 6142.)

Step 5 required participants to demonstrate the ability to meet all success metrics required in phase 1, allowing them to achieve an "Authority to Operate." (AR Tab 163 at 780.) Step 5 also required a technology demonstration, that would take place on-site at each participant's facility. (*Id.*) The PPON noted that the technology demonstration would "focus on the [participant's] approach to incorporate Human Centered Design and how their Agile Development methodology supports throughput and velocity." (*Id.*) In addition, the Army would evaluate each participant's approach to data transition. A successful demonstration would demonstrate how the participant's system could "[h]armonize master data across the five SAP ERP system[s]" and "[r]ationalize the individual program master data into a converged master data management and governance capability." (*Id.*) Finally, participants would also submit in step 5 a proposed PWS and a price for phase 2 of the EBS-C program. (*Id.*)

At the end of step 5, the Army evaluated Telesto's and Accenture's performance on five technical "sprint" tests.[2] Sprints 1 and 2 were rated either "met" or "not met," while sprints 3 through 5 received adjectival ratings ranging from "unacceptable" to "excellent." (AR Tab 455

---

[2] In sprint 1, participants delivered a presentation recommending which ERP the Army should retire first. (AR Tab 455 at 7420.) In sprint 2, participants delivered a presentation "detailing how the [v]endor would migrate core functionalities of SAP . . . into an alternative solution(s)." (*Id*. at 7421.) Sprints 3-5 were technology demonstrations. In sprint 3, each participant had to demonstrate its human-centered design approach by "[s]howcas[ing] an intuitive interface developed in a collaborative and inclusive process." (*Id*. at 7425.) In sprint 4, the participants had to demonstrate their "agile methodology to support throughput and velocity." (AR Tab 163 at 780.) In sprint 5, the participants had to demonstrate their approaches to data transition. (*Id.*)

4

at 7420, 7422.) Both Accenture and Telesto were rated as having successfully met sprints 1 and 2. (AR Tab 455 at 7420-21; Tab 457 at 7450-51.) On sprints 3, 4, and 5, Accenture received ratings of acceptable, excellent, and acceptable, respectively. (AR Tab 455 at 7431.) Telesto received ratings of acceptable, acceptable, and good, respectively. (AR Tab 457 at 7461.) On August 28, 2024, both Telesto and Accenture received invitations to proceed to step 6. (AR Tab 455 at 7433; Tab 457 at 7463.)

In determining which participant would proceed to step 7, the Army considered the evaluation reports from sprints 3, 4, and 5 of step 5; the step-6 evaluations, which reviewed each participant's prototype PWS and production PWS; the updated price each participant submitted at step 6; and the terms and conditions each participant submitted for step 6. (AR Tab 486 at 8038.)

In its final evaluation, the Army noted that the participants' ratings were identical, other than Accenture's excellent performance on sprint 3 and Telesto's good performance on sprint 5. (*Id*. at 8043-44.) While the Army rated both Telesto and Accenture as acceptable in its evaluation at step 6, the Army concluded that "the impact of Accenture's excellent demonstration during [s]print 3 far exceed[ed] the benefits of Telesto's demonstration in [s]print 5." (*Id*. at 8044.) This difference, "and the fact that Accenture's price is [* * *]% lower . . . than Telesto's," resulted in the Army awarding the lone invitation to proceed to step 7 to Accenture on September 26, 2024. (*Id*. at 8045.)

## II. Procedural History

The plaintiff filed this protest on October 30, 2024. (ECF 1.) On December 9, 2024, the plaintiff applied for access to protected material by Ulrich Werner arguing that it required Mr. Werner's technical assistance. (ECF 33.) The defendant and defendant-intervenor objected to the application, arguing that allowing Mr. Werner access to protected information could prejudice the defendant-intervenor by providing Mr. Werner with competition-sensitive information. (ECF 35; ECF 36.) The plaintiff's application for access to protected material was granted with the stipulation that Mr. Werner may not participate in any way either as a member of any group making an offer or proposal or as a consultant, advisor, expert or any other role in the EBS-C program in the future. (ECF 40.)

The plaintiff filed a motion for judgment on the administrative record (ECF 44) and a motion to supplement and complete the administrative record. (ECF 45.) The defendant and defendant-intervenor each subsequently moved to dismiss the protest and moved for judgment on the administrative record. (ECF 52; ECF 50.) The defendant and defendant-intervenor also opposed the plaintiff's motion to supplement and complete the administrative record. (ECF 53; ECF 51.)

The plaintiff responded to the defendants' motions (ECF 56), replied to the responses to its motion to supplement (ECF 57), and filed a second motion to supplement the administrative record (ECF 58). The defendants opposed the second motion to supplement. (ECF 62; ECF 61.) Telesto replied to the oppositions to its second motion to supplement the administrative record. (ECF 66.) Oral argument on all motions was held on April 1, 2025.

**III.    Standard of Review**

"[T]he parties' ability to supplement the administrative record is limited." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009).  In resolving a bid protest, a court is generally restricted to reviewing the record before the agency at the time it made its decision, not "'some new record made initially in the reviewing court.'" *Id.* (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).  Any supplementation a court permits "should be limited to cases in which the omission of extrarecord evidence precludes effective judicial review." *Axiom Res. Mgmt.*, 563 F.3d at 1380 (cleaned up).

The standard for completing the record is less stringent than that required to supplement the record.  *ELB Servs., LLC v. United States*, 172 Fed. Cl. 233, 241-42 (2024).  A motion to complete the administrative record is appropriate when a plaintiff seeks to add "information that was generated and considered by the agency" during the procurement but was omitted from the record filed with the court.  *Smith v. United States*, 114 Fed. Cl. 691, 695 (2014), *aff'd*, 611 F. App'x 1000 (Fed. Cir. 2015); *Poplar Point RBBR, LLC v. United States*, 145 Fed. Cl. 489, 494 (2019) ("A motion to 'complete' the record seeks to add documents relevant to the challenged agency decision that were considered by the relevant agency decisionmakers but were not included in the record").  Generally, "the government's designation of an administrative record is entitled to a presumption of completeness," but this presumption "can be rebutted by clear evidence to the contrary." *Poplar Point*, 145 Fed. Cl. at 494.

The presumptive contents of the administrative record in a bid protest are spelled out in Appendix C to the Rules of the United States Court of Federal Claims ("RCFC"), which identifies "core documents" relevant to a protest that the administrative record "may include as appropriate."  RCFC App. C § VII, ¶ 22.  These documents include "correspondence between the agency and the protester, awardee, or other interested parties relating to the procurement." *Id.*

**IV.    Discussion**

The plaintiff seeks to supplement the administrative record with two declarations from independent expert Ulrich Werner and declarations from executives George Batsakis, Lumi Noah, and Gary Celli.  (ECF 45, 58.)  The plaintiff also seeks to include email exchanges between the government and counsel for Telesto.  (ECF 45 at 7.)  In addition, the plaintiff has filed a motion to complete the record.  (*Id.* at 8.)

Mr. Werner is the chief executive officer ("CEO") of EDC Consulting LLC.  (ECF 45-1 at 3.)  Mr. Werner has experience with government contracts involving IT issues, as well as more than 35 years of experience managing SAP-based projects.  (*Id.* at 2-3.)  Mr. Batsakis, Ms. Noah, and Mr. Celli are employees of Groundswell, LLC, the parent company of Telesto.  (ECF 45-2, 45-3, 45-4.)  Mr. Batsakis is the CEO, Ms. Noah is executive vice president of programs, and Mr. Celli is a vice president and SAP practice lead.  (*Id.*)  Mr. Batsakis, Ms. Noah, and Mr. Celli oversaw Telesto's participation in the EBS-C program.  (*Id.*)

Telesto seeks to include Mr. Werner's declaration for the purpose of demonstrating that the Army failed to comply with 10 U.S.C. § 4022(d)(1)(A) ("the NDC statute").  Telesto argues that Mr. Werner's "technical knowledge [ ] is relevant to the question of whether nontraditional defense contractors are participating 'to a significant extent' in Accenture's bid and whether there is a sufficient basis for that conclusion in the record." (ECF 45 at 4.)

6

The plaintiff also seeks to add Mr. Werner and Ms. Noah's declarations, together with email exchanges between counsel for Telesto and government counsel, to challenge the Army's decision at step 5 to alter the evaluation criteria. According to the plaintiff, the Army's change made it easier for Accenture to satisfy the criteria. The plaintiff claims that Mr. Werner's "technical expertise will assist the Court in understanding the significance of the government's decision." (ECF 45 at 4.) In addition, the plaintiff argues that Ms. Noah's declaration provides evidence that "the Army admitted it changed the requirements . . . because it did not want to 'lose another competitor.'" (*Id.* at 6.)

Telesto next argues the record should be supplemented with the Werner, Noah, and Celli declarations to support its argument that the Army's review of the participants' performance at step 4 was insufficient, technically flawed, and therefore arbitrary and capricious. The plaintiff argues that the declarations of the executives provide information that is not contained in the record but is necessary to properly evaluate Telesto's claims. (ECF 45 at 5.) Telesto argues that Ms. Noah's declaration demonstrates that the army "praised" Telesto's step-4 demonstration, that the step-4 demonstration included real-time integration, and that Ms. Noah herself warned the Army that Accenture may have failed to integrate SAP into their step-4 demonstration. (*Id.*) Telesto cites Mr. Celli's declaration as further evidence that Accenture failed to demonstrate real-time integration and may have faked its step-4 demonstration. (*Id.*)

Finally, the plaintiff seeks to supplement the record with the Werner and Batsakis declarations to support its argument that the Army's conclusion was arbitrary and capricious. Telesto claims that "Mr. Werner's industry expertise provides important context on why the government's procedure was such a profound deviation from standard government practice." (*Id.* at 5.) According to the plaintiff, Mr. Batsakis's declaration further demonstrates that the Army's review was arbitrary and capricious by explaining the technical significance of Telesto's solution. (*Id.* at 6.)

A.   **Supplementation for Issues Within the Court's Jurisdiction**

As explained in the accompanying opinion resolving the protest, the court lacks jurisdiction to review the Army's conduct of the EBS-C program for arbitrary and capricious evaluations and conclusions. Instead, the court's jurisdiction under 28 U.S.C. § 1491(b)(1) is limited to: (1) the Army's decision to use an OT as its procurement vehicle; (2) the Army's compliance with statutes governing Defense Department OTs, 10 U.S.C. §§ 4021 and 4022, and other applicable statutes; (3) the Army's compliance with regulations governing OTs; and (4) the Army's compliance with the terms of the PPON.

Telesto has brought two claims that fall within the court's limited jurisdiction. First, it argues that the Army violated the NDC statute, and second, that the Army violated the PPON by making last-minute changes to the step-5 requirements. Telesto's motions to supplement the record are considered for whether "the omission of extrarecord evidence precludes effective judicial review" of these claims. *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1379.

Telesto also seeks to supplement the record with declarations and documentation in support of its claims that the Army's conduct and determinations were arbitrary and capricious. Regardless of what the proposed supplements might provide, the court lacks jurisdiction to

7

review broadly the Army's conduct or determinations under the arbitrary and capricious standard. Thus, supplementation is unnecessary for the court's review.

### 1.     Nontraditional Defense Contractor

The plaintiff challenges the Army's compliance with 10 U.S.C. § 4022(d)(1)(A), which requires that "at least one nontraditional defense contractor or nonprofit research institution participat[e] to a significant extent in the prototype project." Telesto seeks to include Mr. Werner's declaration for the purpose of demonstrating that the Army failed to comply with this statutory requirement. The plaintiff argues that Mr. Werner's "technical knowledge [ ] is relevant to the question of whether nontraditional defense contractors are participating 'to a significant extent' in Accenture's bid and whether there is a sufficient basis for that conclusion in the record." (ECF 45 at 4.)

Supplementation of the administrative record with Mr. Werner's technical knowledge is not required for effective judicial review. The administrative record reflects that the Army adopted the definition of "significant extent" provided in the Department of Defense's Other Transactions Guide ("DoD OT Guide"). The DoD OT Guide explains that Defense Department components are "expected to consider input from relevant technical advisors (legal, engineering, program management, pricing, logistics, etc.) in assessing the totality of the circumstances for each proposed prototype project before making an independent judgment as to the *significance* of expected NDC or nonprofit research institution participation." DoD OT Guide 32 (2018) (emphasis in original).[3]

The PPON itself offers examples of what constitutes a "significant contribution" to the EBS-C program. It lists examples, such as a participant "supplying a novel application or approach to an existing technology, product or process; providing a material increase in the performance, efficiency, quality or versatility of a key technology, product or process; accomplishing a significant amount of the prototype project; cause a material reduction in the cost or schedule of the prototype project; or, providing for a material increase in performance of the prototype project." (AR Tab 163 at 776.)

The Affirmation of Business Status Certification participants in the project submitted to the Army at step 6 arranged the examples of "significant contribution" into a formal, seven-factor framework under which participants had to certify NDC participation in the project. (AR Tab 459 at 7496-97.) Each of the identified NDCs submitted signed forms certifying their status as an NDC. (AR Tab 459 at 7498-7522.) The Army was entitled to rely on these certifications. *See Harmonia Holdings Grp., LLC v. United States*, 999 F.3d 1397, 1405-06 (Fed. Cir. 2021) ("a contracting officer is generally entitled to rely on a contractor's certifications").

The participants' certifications of compliance with the NDC statute, in combination with the Army's entitlement to rely on those certifications, allow review for compliance with the

---

[3] Version 2.0 of the OT Guide was released in July 2023. The PPON relies on the 2018 version, but the 2023 definition of "significant extent" is the same. *See* DoD OT Guide 32 (2023).

PPON's definition of "significant" contributions to the project and thereby provide sufficient evidence in the record to determine whether the Army complied with the NDC statute.

Mr. Werner is entitled to have an opinion about whether the Army erred in its evaluation, but that opinion is not necessary to allow satisfactory judicial review of the Army's determination as to Accenture's compliance with the NDC statute; the record is replete with documentation of Accenture's work with NDCs, and this documentation is sufficient to allow a determination of whether the Army's conclusion about whether Accenture satisfied the NDC statute is adequately documented and explained. Because the exclusion of Mr. Werner's declarations does not preclude effective judicial review of the Army's compliance with the statutory NDC requirement, the plaintiff's motions to supplement the record with Mr. Werner's declarations related to the NDC statute are denied.

### 2. Step 5

To support its challenge to the Army's revision of the evaluation criteria for step 5 while that step was ongoing, Telesto seeks to add to the administrative record declarations from Mr. Werner and Ms. Noah, together with email exchanges between counsel for Telesto and government counsel. Telesto argues that the Army changed the requirements for the key technological demonstrations in step 5, making it easier for Accenture to satisfy the criteria for step 5.

The plaintiff claims that "Mr. Werner's technical expertise will assist the Court in understanding the significance of the government's decision to lower requirements for [s]tep 5 on the eve of the parties' demo[nstration]s and in the midst of one of the step's sprints." (ECF 45 at 4.) The Noah declaration, according to Telesto, provides evidence that "the Army admitted it changed the requirements and evaluation criteria for sprints 4 and 5 of step 5 because it did not want to 'lose another competitor.'" (*Id.* at 6.) Finally, Telesto seeks to include in the record the email exchanges between its counsel and government counsel to show the Army's "responses to Telesto's inquiries regarding what in the record explains the lowering of the step 5 requirements and evaluation criteria." (*Id.* at 7.)

To start, as explained in the accompanying opinion on the parties' substantive motions, the plaintiff has waived its ability to bring a step-5 claim by failing to object to the Army's step-5 changes in a timely manner. *See Blue & Gold Fleet, LLP v. United States*, 492 F.3d 1308 (Fed. Cir. 2008). Therefore, supplementation of the record is not necessary to resolve the claim.

Even if the waiver principle of *Blue & Gold Fleet* does not apply to protests of OT-authority projects, Telesto is unable to demonstrate prejudice from the change to the evaluation criteria. The Army's decision to change the review criteria for all remaining participants retained an equal playing field for both Telesto and Accenture. As the two remaining participants were treated in the same manner, Telesto cannot demonstrate that the Army's conduct prejudiced it. *See Labatt Food Service, Inc. v. United States*, 577 F.3d 1375, 1381 (Fed. Cir. 2009) (a protestor cannot show prejudice when the agency's "deviation from the solicitation . . . equally permitted all offerors" to compete under the same requirements, thereby "harming none").

Telesto has waived its challenge to the Army's handling of step 5, and even if its claim was not waived, Telesto is unable to demonstrate it was prejudiced. Accordingly, Telesto cannot prevail on this claim. The materials Telesto seeks to add to the record can be of no consequence to this claim. The plaintiff's motions to supplement the record as to the Werner and Noah declarations and the email correspondence are denied insofar as they relate to step 5.

### B.    Supplementation for Other Issues

Because the issue of the court's jurisdiction over OTs is still evolving and has not been settled by the Federal Circuit, the motions to supplement the administrative record are considered as if the court had jurisdiction to review the Army's determinations.

#### 1.    Step 4

The plaintiff seeks to supplement the record with the Werner, Noah and Celli declarations to support its argument that the Army's review of the participants' performance at step 4 was insufficient and technically flawed, and therefore was arbitrary and capricious.

Telesto relies on Mr. Werner's initial declaration to support its assertion that "Accenture 'faked' an important demo at [s]tep 4" by failing to "demonstrate[ ] real-time integration between Appian and SAP." (ECF 58 at 1-2.) Telesto then seeks to add Mr. Werner's second declaration to rebut defendants' arguments that the Army took reasonable steps in reviewing participants' performance during the step-4 demonstration. (*Id.* at 2.) With respect to the Noah and Celli declarations, Telesto seeks to add them to the record to provide additional "evidence . . . that Accenture faked its [s]tep[-]4 demonstration;" establish that Telesto had demonstrated real-time integration when Accenture had not; and show that "Ms. Noah [had] warned the Army of the possibility that Accenture [had] failed to integrate" the Army's software during the step-4 demonstration, but the Army never followed up on the warning. (ECF 45 at 6.)

As at step 5, the plaintiff has waived its ability to pursue this claim by failing to object during the step-4 demonstrations. Therefore, the record does not require supplementation for the conduct of effective judicial review. Telesto had a real-time grievance with the Army's evaluation of the step-4 prototype competition but waited until the results of that competition were known to bring a complaint. This strategy is barred under the principle of *Blue & Gold Fleet*, to the extent it applies to OT protests.

Even if the *Blue & Gold Fleet* waiver rule does not apply to OT protests, the record is sufficient to allow for effective judicial review of Telesto's claim regarding the alleged faking by Accenture of its performance at step 4, so supplementation is not warranted.

In setting out the parameters for the Army's evaluation of participants' step-4 performance, including during the demonstration, the PPON never identifies real-time integration as a factor to be met or satisfied. At step 4, the PPON instructed participants to "demonstrate the EBS-C [p]rototype [p]erformance for all [p]hase 1 requirements . . . including the EBS-C Prototype Phase 1 Success Metrics." (AR Tab 163 at 821.) Participants would "develop and install the EBS-C Solution in the Army Enterprise Cloud Environment . . . to prove out a hardened infrastructure and the [continuous integration/continuous delivery] pipeline." (*Id.* at 779.) The Army evaluated the performance of PWS milestones, the achievement of an "Interim Authority to Test" milestone, the oral presentation, and the technology demonstration.

10

(AR Tab 405 at 6082.) The Army found that both Accenture and Telesto "met" the PWS and "Interim Authority to Test" milestones. (AR Tab 405 at 6082; Tab 407 at 6121.)

Mr. Werner never explains that his discussion of real-time integration and Accenture's failure to demonstrate real-time integration demonstrates that Accenture failed to meet any criterion established for step 4. He asserts, without citation to the PPON or anything else in the record that the demonstration at step 4 "was supposed to show the bidder's solution integrated into the Army Enterprise Cloud Environment." (ECF 45-1 at 4.) Later in the declaration, Mr. Werner restates participants' obligations under the PPON at step 4 and omits his earlier reference to real-time integration. (*Id.* at 17.) If Mr. Werner had connected real-time integration to the PPON's requirements and evaluation criteria for step 4, his declaration may have been useful, but he did not do so. He does not explain how his assertion regarding Accenture's alleged failure is directly connected with or related to the criteria set forth in the PPON. Mr. Batsakis (ECF 45-2 at 4) and Ms. Noah (ECF 45-3 at 2) make similar assertions regarding the importance of showing real-time integration, but neither connects that need to the PPON or explains what requirement of the PPON itself converges with the need to show real-time integration.

Perhaps the Army should have required a showing of real-time integration, but it did not. Likewise, the Army's evaluations of Telesto's and Accenture's performances during the step-4 demonstration never noted that either participant had successfully shown or had failed to show real-time integration. The issue is a red herring. No evidence needs to be added to the record to identify that the plaintiff has concocted a factor that no one was looking for at the time.

Telesto has waived its claim regarding step 4. Moreover, its proposed supplements to the record are unnecessary for effective judicial review of the Army's decision. The plaintiff's motions to supplement the record are denied as they relate to step 4.

### 2. Arbitrary and Capricious Conduct

The plaintiff seeks to supplement the record with the Werner and Batsakis declarations to support its argument that the Army's conclusion that Accenture's prototype was superior is arbitrary and capricious. Telesto claims that "Mr. Werner's industry expertise provides important context on why the government's procedure was such a profound deviation from standard government practice." (ECF 45 at 5.) The plaintiff also seeks to use Mr. Werner's declarations to support a claim that the Army "arbitrarily ignored important aspects of the parties' solutions" and failed "to address fundamental differences in the software architecture of the parties' proposed solutions." (*Id.* at 3.)

The plaintiff relies on the Batsakis declaration to show that one aspect of Telesto's solution "was significant enough that Accenture (following [s]tep 5) proposed to Telesto that they abandon the competition and join forces." (*Id.* at 6.) Telesto also relies on the Batsakis declaration to support its claim that Accenture appeared to have inside information on the Army's views of the parties' respective solutions, that the Army improperly delayed its evaluations of step 5, and that it refused to explain its ultimate decision. The Batsakis declaration, Telesto posits, is also necessary for effective judicial review regarding pricing and the prejudice suffered by Telesto. (*Id.*)

The plaintiff again fails to meet its burden to demonstrate that the inclusion of these materials is necessary for effective judicial review. *Axiom*, 564 F.3d at 1380. Mr. Werner's declarations explain why he thinks the Army made a mistake; that is the kind of opinion that is not useful in evaluating the record itself. Mr. Werner has great expertise and experience. Had he been evaluating the participants' performance of the OT's requirements, and not some other requirements absent from the PPON, a different outcome might have been reached. He was not evaluating the project in his declarations, however, because his comments are not tied to the PPON or the Army's evaluation criteria. As a result, his opinions are not relevant to how the Army conducted its review. The Army's rationale for its conclusions throughout the process are extensive, reasoned, and consistent with the PPON. The record allows for review of those decisions.

The same is true for the Batsakis declaration. It matters not that Accenture thought highly of one aspect of Telesto's prototype; what matters is what the Army thought at each step of the process. The record is also adequate to allow review of the Army's consideration of participants' proposed pricing. Any delay by the Army in announcing the outcome of step 5 did not harm Telesto, and the record is more than sufficient to allow for effective judicial review of the Army's ultimate decision. The Batsakis declaration also reflects an attempt unsupported by evidence in the record to imply a claim of bad faith by the Army. The plaintiff does not actually make such a claim, which is subject to a heightened evidentiary showing that Telesto cannot meet on this record. *See Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004).

The motions to supplement the record with the Werner and Batsakis declarations are denied as they relate to the Army's conduct of the EBS-C program.

### C.   Motion to Complete the Record

Telesto has also moved to complete the administrative record with missing emails between it and the government. Telesto contends that it has identified two emails between itself and the Army that are missing from the record. Telesto cites, in support of its motion to complete the record, an email exchange between the parties' lawyers during this litigation as evidence that the defendant improperly withheld materials from the record. (ECF 45-7 at 2.)

A motion to complete the administrative record is appropriate when a plaintiff seeks to add "information that was generated and considered by the agency" during the procurement but was omitted from the administrative record prepared for the protest. *Smith*, 114 Fed. Cl. at 695. In compiling for the administrative record communications between participants and the agency related to a procurement, the defendant has discretion and is entitled to a presumption of completeness. *Poplar Point*, 145 Fed. Cl. at 494. To rebut that presumption, Telesto must provide "clear evidence to the contrary." *Id.* Telesto has failed to rebut the presumption that the administrative record is complete.

Telesto seeks to complete the record with emails sent by Mr. Batsakis. The first, an unsolicited email sent after Telesto reviewed the Army's comments from step 4, explains Telesto's intent to meet the Army's requirements and details how Telesto plans to incorporate the Army's feedback into performance improvements. (ECF 44-2 at 14.) The second email was sent by Mr. Batsakis after step 5. This email too was unsolicited; it provides "some observations

and closing comments on why [ ] Telesto is the best choice for [s]tep 7." (*Id.* at 20.) Telesto makes no argument that either email was considered, arguing only that "it is likely that the Army did review the submissions." (ECF 57 at 21.) Telesto relies on these emails as evidence of an incomplete record, but the evidence falls short of overriding the presumption that the record is complete in its current form.

The burden is on Telesto to articulate that the information was considered by the Army during the project. It is insufficient to show that additional information exists but was not included in the record. The information must have been both considered by the agency during the project and relevant to the agency's decision. The defendant asserts that the record includes all communications that the Army considered in making its decision. The record does not otherwise call that assertion into question. The record contains no indication that the Army considered these emails, and nothing in the record supports the inference that they were considered. Barring any indication in the record that the missing documents were considered by the Army, Telesto in unable to overcome the presumption that the record is complete. Accordingly, Telesto's motion to complete the administrative record is denied.

V.  **Conclusion**

Telesto's motions to supplement and to complete the administrative record (ECF 45; ECF 58) are **DENIED**.

It is so **ORDERED**.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**
